USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: __7/12/18__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MYRA SMITH,

                        Plaintiff,

          - against -

THE CITY OF NEW YORK,

                        Defendant.

16-cv-9244 (JGK)

**MEMORANDUM OPINION
AND ORDER**

JOHN G. KOELTL, District Judge:

The plaintiff, Myra S. Smith, proceeding pro se, brings this action against her employer, the City of New York. The plaintiff is currently employed by the New York City Police Department ("NYPD"). The plaintiff alleges that the defendant discriminated against her on the basis of her age and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (the "ADEA"), the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. (the "NYSHRL"), and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 et seq. (the "NYCHRL").

The defendant has moved to dismiss the plaintiff's amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius,

618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis, 618 F.3d at 170 (citation omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id. See also Estevez v. City of New York, No. 16-cv-00073 (JGK), 2017 WL 1167379, at *1 (S.D.N.Y. Mar. 28, 2017).

## II.

The following facts are taken from the plaintiff's Amended Complaint ("Am. Compl.") and are assumed to be true for the purposes of this motion to dismiss.

The plaintiff was hired by the NYPD as a Police Administrative Aide on November 8, 2014. Am. Compl. ¶ 1. The plaintiff, a black woman, was 55 years of age when she was hired. Am. Compl. 10. In February 2015, she began work at the 71st Precinct after completing the Police Academy. Id. ¶ 2. The plaintiff passed the Senior Police Administrative Aide ("SPAA") test on October 22, 2015. Id. ¶ 4. The plaintiff was placed on a waitlist for a SPAA position. Id. ¶ 5.

Soon after the plaintiff started working at the 71st Precinct, she began regularly receiving "informal notes"

criticizing her work performance from SPAA Eileen Thompson, a Senior Administrative Aide in the 71st Precinct. Id. ¶ 7. The notes were allegedly posted on a public board near the plaintiff's work area. Id. The plaintiff alleges that she received these notes at least once a week and in some cases more frequently. Id. ¶ 7. The plaintiff alleges that she was subjected to "SPAA Thompson's negative behavior for well over a year." Id. ¶ 9. SPAA Thompson was not the plaintiff's direct supervisor. Id. ¶ 12.

In August 2015, approximately six months after the plaintiff began working at the 71st Precinct, SPAA Thompson wrote a memo to the plaintiff alleging that she had improperly entered data into a NYPD system. Id. ¶ 19. The plaintiff reported that she brought the memo to her immediate supervisor and explained that she believed she had not made any errors in the data entry. Id. ¶¶ 21-23. SPAA Thompson did not issue plaintiff any formal discipline as a result of this incident at that time. Id. ¶ 23.

On October 14, 2015, the plaintiff filed a complaint with the NYPD Internal Affairs Bureau ("IAB") "reporting the disparate and unwelcome treatment received from SPAA Thompson." Id. ¶ 11. In December 2015, the plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging race and age discrimination. Id. ¶ 12.

On February 14, 2016, SPAA Thompson formally disciplined the plaintiff for the data entry issue from the prior August. Id. ¶ 31. The charge was recorded as a minor violation in the minor violations log. Id. ¶ 31. The plaintiff alleges "upon information and belief" that SPAA Thompson was given notice of the October 2015 complaint to the IAB "shortly before February 2016". Id. ¶ 32.

On February 22, 2016, SPAA Thompson charged the plaintiff with another minor violation, apparently again for failing to log information into the NYPD data entry system properly. Id. ¶ 34.

On March 3, 2016, the plaintiff forwarded a complaint to IAB reporting that she was being subjected to retaliation. Id. ¶ 35. In April 2016, the plaintiff filed a second EEOC complaint alleging race and age discrimination and retaliation based on the actions of SPAA Thompson. Id. ¶ 36-37.

On June 16, 2016, SPAA Thompson issued the plaintiff a command discipline for "mishandling complaint reports[,] citing numerous times during the past 8 month[s]." Id. ¶ 40.

In August 2016, SPAA Thompson charged the plaintiff with a third minor violation, allegedly for failing to enter a complaint properly into the data entry system. Id. ¶ 43-44. SPAA Thompson also issued the plaintiff a command discipline for this violation. Id. ¶ 45.

In June 2017, the plaintiff was promoted to the position of SPAA in the payroll unit in the 88th Precinct. Id. ¶ 51. Approximately two weeks later, in July 2014, the plaintiff was reassigned to the "124 Room". Id. ¶ 54. The plaintiff alleges that the reassignment was a demotion that resulted in substantially less pay and other negative changes in her employment, including a change in her hours and corresponding loss of night differential pay. Id. ¶¶ 54-55.

### III.

The plaintiff brings claims for race and age discrimination under Title VII, the ADEA, the NYSHRL, and the NYCHRL.

The Second Circuit Court of Appeals has made clear that "courts must analyze NYCHRL claims separately and independently from any federal and state law claims . . . ." Mihalik v. Credit Agricole Cheuvreux N. Am. Inc., 715 F.3d 102, 109 (2d Cir. 2013). Therefore, the Court begins by addressing the discrimination claims under Title VII, the ADEA, and the NYSHRL.

### A.

To establish a prima facie case of employment discrimination under Title VII, a plaintiff must generally show that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an

inference of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). However, "a plaintiff is not required to plead a prima facie case under McDonnell Douglas . . . to defeat a motion to dismiss." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015); see also Littlejohn v. City of New York, 795 F.3d 297, 310 (2d Cir. 2015). "[T]he 'prima facie case' requirement of McDonnell Douglas [is] applied only at the summary judgment phase because it 'is an evidentiary standard, not a pleading requirement.'" Vega, 801 F.3d at 83 (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002)). Accordingly, "while a discrimination complaint need not allege facts establishing each element of a prima facie case . . . it must at a minimum assert nonconclusory factual matter sufficient to nudge [ ] [its] claims . . . across the line from conceivable to plausible." Vega, 801 F.3d at 84 (internal citation and quotation marks omitted). See also Morales v. City of New York, No. 14-cv-7253 (JGK), 2016 WL 9651130, at *4 (S.D.N.Y. Aug. 9, 2016).

While Title VII prohibits discrimination based on "race, color, religion, sex, or national origin," the ADEA prohibits discrimination based upon a person's age of more than forty years. See 29 U.S.C. § 913(a) ("The prohibitions of this chapter [the ADEA] shall be limited to individuals who are at least 40 years of age."). The criteria for stating a claim for

discrimination under both statutes are identical except for the prohibited basis of the discrimination.  See, e.g., Staten v. City of New York, No. 16-cv-5317 (JGK), 2017 WL 2937698, at *7 (S.D.N.Y. July 10, 2017), aff'd, 726 F. App'x 40 (2d Cir. 2018) (summary order).  The criteria to be applied under the NYSHRL are also identical.  See Diaz v. City Univ. of N.Y., No. 13-cv-2038 (PAC), 2014 WL 10417871, at *26 (S.D.N.Y. Nov. 7, 2014).

### 1.

The defendants argue that the plaintiff's claims of employment discrimination should be dismissed because she has not alleged that she was subjected to any adverse employment actions.

To allege an adverse employment action, a plaintiff must demonstrate that she was subjected to a "materially adverse change in the terms and conditions of employment." Galabya v. New York City Board of Educ., 202 F.3d 636, 640 (2d Cir. 2000). Examples of materially adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Sanders v. New York City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) (quoting Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)).  See also Robins v. N.Y.C. Bd. of Educ.,

No. 07-cv-3599 (JGK), 2010 WL 2507047, at *7 (S.D.N.Y. June 21, 2010), aff'd, 606 F. App'x 630 (2d Cir. 2015).

The defendant argues that the minor violations and command disciplines that were issued to the plaintiff by SPAA Thompson were not materially adverse actions and therefore the plaintiff has not stated a claim for discrimination.

As an initial matter, the defendant ignores the fact that the plaintiff alleges in her complaint that in July 2017 she was demoted to a position in the "124 Room" and that the demotion resulted in substantially less pay and a change in her hours which resulted in a loss of her night differential pay rate. Am. Compl. ¶¶ 54-55. This demotion was plainly a materially adverse action because it negatively affected the terms and conditions of her employment, namely her pay and her hours. See, e.g., Weeks v. N.Y.S. Div. of Parole, 273 F.3d 76, 85 (2d Cir. 2001) ("Such a change 'might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'").

However, minor violations and command disciplines may also be materially adverse actions where the plaintiff alleges that such discipline may have a subsequent adverse impact on a material term or condition of her employment. For example, a

9

written discipline may constitute a material adverse action when it is placed in a permanent file that is consulted when making future employment decisions regarding promotions or pay. See Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002) ("Lesser actions such as negative employment evaluation letters may also be considered adverse."); Lawrence v. Mehlman, 389 F. App'x 54, 56 (2d Cir. 2010) (summary order) ("Reprimands or negative evaluation letters may, in some circumstances, constitute adverse employment action, and whether they do so is typically a question of fact for the jury." (citations omitted)); Farina v. Branford Bd. of Educ., 458 F. App'x 13, 17 (2d Cir. 2011) (summary order) ("While 'negative employment evaluation letters,' or reprimands may be considered adverse employment actions, here there was 'no proof that this evaluation had any effect on the terms and conditions of [the plaintiff's] employment." (citations omitted)); cf. Weeks, 273 F.3d at 86 (noting that a notice of discipline was not an adverse action where there were no allegations regarding "its effect or ramifications, how or why the effect would be serious, whether it went into any file, or [if] it was in writing").

Here, the plaintiff alleged that the minor violations and command disciplines may have had an effect on the terms and conditions of her employment. The plaintiff alleges that these disciplines were placed in a permanent record that is consulted

when her employer is considering changes to her pay or promotions. See Am. Compl. ¶ 10 ("Minor violations and command disciplines that are on an employee['s] permanent record can place an employee on probation at risk of losing their employment. . . . [and] command disciplines on a permanent record can affect an employee['s] future opportunities for promotion, incentive bonus, merit pay and ability to be transferred should the employee desire to do so."). The plaintiff further alleges that she was demoted in August 2017, after she was issued three minor violations and two command disciplines. Id. at ¶¶ 53-54. The plaintiff therefore has plausibly alleged that the minor violations and command disciplines contributed to her demotion and therefore affected the terms and conditions of her employment.

Accordingly, the plaintiff has alleged that she suffered material adverse employment actions.

## 2.

The defendants also argue that the plaintiff has not stated a claim for discrimination because she has not alleged that the adverse employment actions were taken against her under circumstances giving rise to an inference of discrimination.

The plaintiff has not offered any direct evidence of discrimination, such as discriminatory comments made by SPAA Thompson. However, "[a] plaintiff may demonstrate circumstances

11

giving rise to an inference of discrimination by alleging that
[s]he was treated less favorably than similarly situated
employees of other races or national origins." Brown v. Daikin
Am. Inc., 756 F.3d 219, 229 (2d Cir. 2014) (citations omitted).
To establish an inference of discrimination based on similarly
situated employees, "a plaintiff must allege that 'she was
similarly situated in all material respects to the individuals
with whom she seeks to compare herself.' . . . The plaintiff's
and comparator's circumstances must bear a 'reasonably close
resemblance,' but need not be 'identical.'" Id. at 230
(citation omitted). In determining whether a comparator is
similarly situated, courts should consider: "(1) whether the
plaintiff and those he maintains were similarly situated were
subject to the same workplace standards; and (2) whether the
conduct for which the employer imposed discipline was of
comparable seriousness." Estevez v. S & P Sales & Trucking LLC,
No. 17-cv-1733 (PAE), 2017 WL 5635933, at *2 (S.D.N.Y. Nov. 22,
2017). "Ordinarily, '[w]hether two employees are similarly
situated . . . presents a question of fact,' rather than a legal
question to be resolved on a motion to dismiss." Brown, 756
F.3d at 230; see also Kunik v. N.Y.C. Dep't of Educ.,
No. 15-cv-9512 (VSB), 2017 WL 4358764, at *9 (S.D.N.Y. Sept. 29,
2017) ("Although Defendants may ultimately be able to show that
Kunik's comparators were not similarly situated, did not receive

better schedules and/or lighter workloads, or that they did not
have discriminatory intent, these questions should not be
resolved at the pleadings stage.").

The plaintiff alleges that SPAA Thompson did not
"scrutinize or discipline" other employees at the 71st Precinct
who held the same job as the plaintiff, started working at the
same time as the plaintiff, and were also on probation.
Am. Compl. 11. Specifically, the plaintiff identifies four
other PAAs that she alleges were not issued minor violations or
command disciplines for data entry mistakes similar to those she
allegedly committed. All four comparators are under the age of
forty, and two are identified as "black" and one as "Asian".
Id. The race of the fourth is not identified. Id. With
respect to two of the employees, Ms. Wu (under 34 and Asian) and
Ms. Bailey (under 34 and black), the plaintiff alleges specific
mistakes that each of those PAAs made for which they were not
written up. She also alleges that those mistakes were similar
to the mistakes for which SPAA Thompson disciplined the
plaintiff. Am. Compl. 11 & ¶¶ 48, 50.

Generally, the plaintiff alleges that "SPAA Thompson
treated Plaintiff and other PAAs over the age of 40 differently
in that she did not write up PAAs under the age of 40. SPAA
Thompson also only wrote up Black PAAs and did not write up any
PAAs who were not black." Am. Compl. ¶ 13.

13

The plaintiff has provided sufficient detail with respect
to two co-employees to establish them as comparators. She has
alleged that Ms. Wu and Ms. Bailey held the same position as she
did, started about the same time as she started, also were on
probation, and also were not supervised by SPAA Thompson. Am.
Compl. 11 & ¶¶ 48, 50. She further alleges that they committed
similar errors to those she allegedly committed, but they were
not disciplined by SPAA Thompson. Id. She alleges with
specificity the mistakes made by the other PAAs and alleges that
they were mistakes of comparable significance to her own. Id.

Accordingly, reading the complaint in the light most
favorable to the plaintiff, she has sufficiently alleged that
her circumstances bore a "reasonably close resemblance" to those
of her alleged comparators to survive a motion to dismiss. See
Brown, 756 F.3d at 230 (holding that the plaintiff had alleged
that the comparators were similarly situated where he alleged
that the three employees worked in the same group as he did and
two reported to the same supervisor); Yan Ping Xu v. City of New
York, 700 F. App'x 62, 64 (2d Cir. 2017) (summary order)
(holding that the plaintiff had alleged that comparator was
similarly situated where she alleged that she and the comparator
both held the same position and were "employed at the same
occupational level"); Kunik, 2017 WL 4358764, at *9 (holding
that the plaintiff alleged a plausible inference of

14

discrimination based on disparate treatment when she had "identifie[d] her comparators by name [and] not[ed] that they were part of the same ESL Department").

The plaintiff therefore has sufficiently alleged that the minor violations and command disciplines were issued under circumstances giving rise to an inference of discrimination because she has alleged that she was treated less favorably than similarly situated employees of other races and younger ages.[1] Additionally, because the plaintiff alleges that this discipline was placed in her record and had a potential impact on future employment decisions, the plaintiff has sufficiently alleged that her demotion was discriminatory. See Littlejohn, 795 F.3d at 311 ("[To survive a motion to dismiss,] what must be plausibly supported by facts alleged . . . is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent.").

---

[1] While Ms. Bailey is the same race as the plaintiff, the plaintiff's allegations regarding SPAA Thompson's treatment of Ms. Wu, who is not the same race as the plaintiff, are sufficient for the plaintiff to survive a motion to dismiss her racial discrimination claim.

**B.**

The NYCHRL was intended to be more protective than Title VII. See, e.g., Mihalik, 715 F.3d at 109 ("[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims . . . construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." (internal quotations and citations omitted)).

Therefore, because the plaintiff has stated a claim for discrimination under the stricter Title VII standard, she has plainly stated a similar claim under the NYCHRL.

**IV.**

The plaintiff also claims that she was retaliated against in violation of Title VII, the ADEA, the NYSHRL, and the NYCHRL.

Retaliation claims under the NYCHRL must be analyzed separately from claims under Title VII, the ADEA, and the NYSHRL. See Mihalik, 715 F.3d at 109. The criteria for a claim of retaliation under Title VII, the ADEA, and the NYSHRL are identical. See, e.g., Mohamed v. N.Y.U., No. 14-cv-8373 (GBD), 2017 WL 5307391, at *5 (S.D.N.Y. Sept. 10, 2015).

**A.**

"To establish a prima facie case of retaliation, [the plaintiff] must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) [the

16

plaintiff] suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012) (citations omitted) (Title VII and the NYSHRL); Kessler v. Westchester Cty. Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006) (Title VII and the ADEA).

## 1.

The defendant first argues that the plaintiff has not alleged that she suffered from a materially adverse action giving rise to a retaliation claim.

To establish an adverse action under Title VII's antiretaliation provision, a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). This standard is broader than the adverse employment action requirement in the Title VII discrimination context, because the action in question need not affect the terms and conditions of employment in order to be considered adverse. Id. at 64 (the antiretaliation provision "is not limited to discriminatory acts that affect the terms and conditions of employment"); Kessler, 461 F.3d at 207; Gelin v. Geithner, No. 06-cv-10176, 2009 WL 804144, at *20 (Mar. 26,

2009), aff'd, 376 F. App'x 127 (2d Cir. 2010) (summary order).

However, "trivial harms" such as "petty slights, minor

annoyances, and simple lack of good manners" are not sufficient

for actionable retaliation claims. White, 548 U.S. at 68.  See

also White v. Dep't of Corr. Servs., 814 F. Supp. 2d 374, 387-88

(S.D.N.Y. 2011).  The standard is the same under the ADEA and

the NYSHRL.  See Ulrich v. Moody's Corp., No. 13-cv-0008 (VSB),

2014 WL 12776746, at *17 (S.D.N.Y. Mar. 31, 2014), report and

recommendation adopted as modified, No. 13-cv-00008 (VSB), 2014

WL 4977562 (S.D.N.Y. Sept. 30, 2014) (ADEA); Gorman v. Covidien,

LLC, 146 F. Supp. 3d 509, 533 (S.D.N.Y. 2015) (NYSHRL).

    The plaintiff's demotion to the "124 Room" -- which

resulted in a pay decrease and the assignment of less desirable

hours -- is plainly a materially adverse action that gives rise

to a retaliation claim.  It would even rise to an adverse change

in the conditions of employment.  See, e.g., Weeks, 273 F.3d at

85 ("Such a change 'might be indicated by a termination of

employment, a demotion evidenced by a decrease in wage or

salary, a less distinguished title, a material loss of benefits,

significantly diminished material responsibilities, or other

indices . . . unique to a particular situation.'").

    The minor violations and command disciplines -- which are,

as discussed above, recorded in the officer's personnel record

and may have an effect on an officer's future application for a

demotion or transfer -- are also materially adverse actions giving rise to a retaliation claim. See, e.g., Millea v. Metro-N. R.R. Co., 658 F.3d 154, 165 (2d Cir. 2011) ("A formal reprimand issued by an employer is not a 'petty slight,' 'minor annoyance,' or 'trivial' punishment; it can reduce an employee's likelihood of receiving future bonuses, raises, and promotions, and it may lead the employee to believe (correctly or not) that his job is in jeopardy."); White, 814 F. Supp. at 388 (collecting cases and noting that "a reasonable jury could find that, at least, the notice of discipline was itself sufficiently adverse to give rise to an actionable retaliation claim").

Accordingly, the plaintiff has alleged that she suffered materially adverse actions that give rises to a retaliation claim.

### 2.

The defendant also argues that the plaintiff has not alleged that there was a causal connection between the protected activity and the adverse actions that were taken against her.

Causation may be shown either directly, through evidence of retaliatory animus by the person who initiated the adverse action against the plaintiff, or indirectly, by showing that the retaliatory or discriminatory action was taken shortly after the protected activity or by showing disparate treatment of other employees in similar circumstances. See Gordon v. N.Y.C. Bd. of

19

Educ., 232 F.3d 111, 117 (2d Cir. 2000); Knight v. City of New York, 303 F. Supp. 2d 485 (S.D.N.Y. 2004); Philippeaux v. Fashion Inst. of Tech., No. 93-cv-4438, 1996 WL 164462, at *8-9 (S.D.N.Y. Apr. 9, 1996), aff'd 104 F.3d 356 (2d Cir. 1996). See also Hill v. Citibank Corp., 312 F. Supp. 2d 464, 478-79 (S.D.N.Y. 2004).

The plaintiff has not alleged any direct evidence of retaliation. However, the plaintiff has alleged that she was issued two minor violations in February 2016, and that "[o]n information and belief SPAA Thompson found out about the October 2015 report at some point shortly before February 2016." Am. Compl. ¶ 32. The date on which the employer becomes aware of the commencement of the protected activity is the appropriate starting point for the causation analysis. E.g., Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam).

A time lapse of less than one month between the date the supervisor learns of the protected activity and the date the supervisor disciplines the employee is sufficiently short to justify an inference of causation. See Kwan v. Andalex Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013) ("The three-week period from [the plaintiff's] complaint to her termination is sufficiently short to make a prima facie showing of causation through temporal proximity.").

Accordingly, the plaintiff has stated a viable claim for retaliation under Title VII, the ADEA, and the NYSHRL based on the temporal proximity between the time that SPAA Thompson learned of her IAB complaint and the issuance of her first minor violation.

**B.**

Because the NYCHRL was intended to be more protective than Title VII, see Mihalik, 715 F.3d at 109, and the plaintiff has stated a claim for retaliation under the federal and state laws, the plaintiff has also stated a claim for retaliation under the NYCHRL.

**V.**

Finally, the plaintiff has alleged that she was subjected to a hostile work environment in violation of Title VII, the ADEA, the NYSHRL, and the NYCHRL.

The standards for a hostile work environment under Title VII and the ADEA are the same except for the object of the hostility, and the standard under the NYSHRL parallels that under the federal statutes. See, e.g., Carter v. Verizon, No. 13-cv-7579 (KPF), 2015 WL 247344, at *8 (S.D.N.Y. Jan. 20, 2015). The NYCHRL sets forth a broader protection and will be considered after the other statutes.

**A.**

Under Title VII, and therefore under the ADEA and the NYSHRL, the plaintiff must establish two elements to prove that she was subjected to a hostile work environment. First the plaintiff must demonstrate that the harassment was "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (alteration in original) (internal quotation omitted); see also Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002); Hawana v. City of New York, 230 F. Supp. 2d 518, 532 (S.D.N.Y. 2002). Second, the plaintiff must show a specific basis for imputing the hostile work environment to the employer. See Alfano, 294 F.3d at 373.

To satisfy the first requirement, which is the only one disputed by the defendant, the plaintiff must establish that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (internal citations and quotations omitted); see also Thompson v. Am. Eagle Airlines, Inc., No. 99-cv-4529, 2000 WL 1505972, at *6 (S.D.N.Y. Oct.6, 2000). "[T]he plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a

22

series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Cruz, 202 F.3d at 570 (internal quotations and citations omitted); accord Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000). To determine whether the plaintiff has met this burden, the Court will look at the totality of the circumstances including the severity, frequency, and degree of the abuse, whether it is physically threatening or intimidating, and whether it unreasonably interfered with the plaintiff's work performance. Id. (citing Harris, 510 U.S. at 23); see also Schwapp v. Town of Avon, 118 F.3d 106, 110–11 (2d Cir. 1997); Hawana, 230 F .Supp. 2d at 532–33. See also Hill, 312 F. Supp. 2d at 476.

As an initial matter, the defendant argues in reply that the plaintiff has forfeited her hostile work environment claim because she failed to respond substantively in her opposition to the defendant's motion to dismiss that claim. But pro se plaintiffs are not held to the same standard as counsel, and a pro se's failure to respond to an argument in the moving papers of a motion does not result in the forfeiture of that argument. See, e.g., McCall v. Pataki, 232 F.3d 321, 323 (2d Cir. 2000) ("If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule

12(b)(6) motion does not warrant dismissal."); Lopez v.
Cipolini, 136 F. Supp. 3d 570, 579 (S.D.N.Y. 2015).

As to the merits of the claim, the defendant argues that
the allegations fall short of the objective severity required to
state a claim for a hostile work environment.

The plaintiff alleges that she received informal notes from
SPAA Thompson that were posted on a public board near the
plaintiff's work area. Am. Compl. ¶ 7. From February 2015 to
August 2016, the notes appeared at least once per week and
sometimes more often. Id. The plaintiff alleges that she
witnessed her co-workers reading the notes and "then talking
amongst themselves." Id. The plaintiff also alleges that she
was issued three minor violations and two command disciplines
between February 2016 and August 2016. Id. at 31, 34, 40, 43.
Generally, the plaintiff alleges that she was "subject to SPAA
Thompson's negative behavior for well over a year." Id. at 9.

While the alleged campaign against the plaintiff was not
overtly hostile based on the plaintiff's race or age, a
plaintiff may rely on seemingly neutral hostile incidents to
support a hostile work environment claim where she has shown
that other incidents were race or sex based. See Cristofaro v.
Lake Shore Cent. Sch. Dist., 473 F. App'x 28, 30 (2d Cir. 2012)
(summary order) ("While facially neutral incidents may be
considered 'among the 'totality of the circumstances' ... in any

24

hostile work environment claim," there must be a 'circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." (citing Alfano v. Costello, 294 F.3d 365, 378 (2d Cir. 2002))); Figueroa v. City of New York, 118 F. App'x 524, 526 (2d Cir. 2004) (summary order) ("With respect to the offensive but gender-neutral conduct Figueroa pointed to, she offered only the conclusory statement that the harassment occurred because she is a woman. She failed to adduce evidence sufficient to link these acts to her gender or to the perpetrators' gender-based animus.").

As described above, the plaintiff has alleged sufficient factual circumstances to support an inference that the campaign against her was motivated by her race or age. Whether those inferences are correct cannot be decided on a motion to dismiss.

Accordingly, the plaintiff has stated a claim for a hostile work environment under Title VII, the ADEA, and the NYSHRL. It follows that the plaintiff has also stated enough facts to allege a claim for a hostile work environment under the more expansive standard of the NYCHLR. See, e.g., Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013); Farruqia v. N. Shore Univ. Hosp., 820 N.Y.S.2d 718, 724 (Sup. Ct. 2006).

**CONCLUSION**

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the reasons explained above, the defendant's motion to dismiss is **denied.**

The Clerk is directed to close all pending motions.

**SO ORDERED.**

Dated:     **New York, New York**
            **July 11, 2018**

                                    **John G. Koeltl**
                      **United States District Judge**